**In re Danita Denise HOLLOWAY, Debtor.**

**Fred W. WOODSON, Trustee, Plaintiff,**

**v.**

**CITY FINANCE CO., Auto Trade Center and Danita Denise Holloway, Defendant.**

**Bankruptcy No. 90–02727–W. Adv. No. 90–0322–W.**

United States Bankruptcy Court, N.D. Oklahoma.

Oct. 17, 1991.

Order Supplementing Nov. 14, 1991.

Fred W. Woodson, Tulsa, Okl., for plaintiff.

Edward E. Glass, Tulsa, Okl., for defendant City Finance Co.

## MEMORANDUM DECISION AND ORDER

MICKEY DAN WILSON, Bankruptcy Judge.

This matter comes on for hearing pursuant to a complaint filed by plaintiff seeking to avoid a preferential transfer pursuant to 11 U.S.C. § 547(b). The matter has been submitted for decision on stipulations by the parties. Upon consideration thereof, and of the record herein, this Court finds, concludes and orders as follows.

## FINDINGS OF FACT

The parties stipulate, and the Court finds, as follows:

1. Defendant, City Finance Co., is a creditor of the debtor and holds a security interest in a 1984 Oldsmobile Cutlass, VIN 1G3AR47A7ER407817.

2. City Finance delivered a lien entry form to the Oklahoma Tax Commission twelve (12) days after the granting of the security interest by the debtor.

3. Pursuant to 11 U.S.C. § 547(e)(2)(A), a transfer is made at the time it takes effect between the parties if perfected within ten (10) days.

4. Title 47 O.S.A. § 1110A.2. provides for fifteen (15) days from the date of execution of the security agreement in which to perfect a security interest.

5. The plaintiff Trustee asserts that the purported perfected security interest of City Finance is invalid in that the perfection of said security interest occurred outside the ten (10) day period and therefore constitutes a preferential transfer and is avoidable.

## CONCLUSIONS OF LAW

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

An insolvent debtor may not favor one creditor over another and to do so may constitute a preferential transfer if the elements contained in § 547(b) are satisfied. First, there must be a transfer of an interest of the debtor in property. Additionally, the transfer must be: (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt; (3) made while the debtor is insolvent; (4) made within ninety days before the filing of the petition in bankruptcy; and (5) enable the creditor to improve its position. The parties agree that four of the elements of § 547(b) have been met. Therefore, the only remaining question is whether the secured party's perfection of its security agreement was a transfer on account of an antecedent debt.

The act of perfecting a security interest is a transfer. 11 U.S.C. § 101(54). If creation of a security interest and its perfection do not occur on the same day, § 547(e)(2) controls when the transfer will be deemed to have occurred. Section 547(e)(2) provides for a relation back period if the security interest is perfected within ten days after the creation of the security interest. If perfection occurs outside the ten day period, the transfer is considered to have been made on the date of perfection. *In re Holder*, 18 B.C.D. 917, 94 B.R. 395 (B.C., M.D.N.C.1988). This determination is necessary to ascertain whether a transfer is made on account of an antecedent debt. "The effect of the perfection provision of § 547(e) is that if a transfer made for a contemporaneous consideration is not perfected at once or within the statutory grace period, the consideration will be 'antecedent to the delayed effective date of the transfer.'" 4 *Collier on Bankruptcy* ¶ 547.05, at 547–36 (15th ed. 1991), citing *Corn Exch. Nat'l Bank & Trust Co. v. Klauder*, 318 U.S. 434, 437, 63 S.Ct. 679, 682, 87 L.Ed. 884 (1943).

At issue is a conflict between Title 47 O.S.A. § 1110 A.2. and § 547(e)(2) of the Bankruptcy Code. The Oklahoma statute gives the secured party fifteen days from date of execution of the security agreement to perfect its security interest by filing a lien entry form with the Oklahoma Tax Commission. If filed within the fifteen day period, "perfection of the security interest shall begin from the date of the execution of the lien entry form." Title 47 O.S.A. § 1110 A.2. Section 547(e)(2) states that perfection of a security interest will relate back to the time the transfer was made

only if perfected within ten days. In the present case, the secured party perfected twelve days after the initial transfer.

■ "The determination of when a transfer is perfected depends entirely on state law." 4 *Collier on Bankruptcy* ¶ 547.16[2] at 547–68 (15th ed. 1991). Therefore, state law controls what actions a secured party must take to properly perfect its security interest. In this case, state law provides that to perfect a security interest in a motor vehicle the secured party must file a lien entry form with the Oklahoma Tax Commission. However, "the supremacy of state law is confined to determining what constitutes perfection of a transfer. The question of whether a transfer is preferential and avoidable by the trustee is governed by section 547 of the Code." 4 *Collier on Bankruptcy* ¶ 547.16[2], at 547–69 (15th ed. 1991). The "majority of courts has determined that state law is appropriate for determining the date of perfection, however, the date of transfer is governed by the provisions of section 547." *In re Holder,* 18 B.C.D. 917, 918, 94 B.R. 395, 398 (B.C., M.D.N.C.1988). Pursuant to the Supremacy Clause of the United States Constitution, Art. VI, § 2, the Bankruptcy Code, as part of the federal law, cannot be superseded by conflicting state law.

Applicable Oklahoma law provides that a creditor can perfect its security interest outside the grace period thus creating a lien on the collateral that will have priority over subsequent lienholders in a state court proceeding. "However, if that lien is not perfected within the ten day window allowed by § 547(e)(2) and that creditor finds itself entangled in a bankruptcy proceeding in a federal Bankruptcy Court, that lien is avoidable by the Trustee in bankruptcy as a preference." *In re Holder* at 919, 94 B.R. at 398. A grace period such as the one specified in the Oklahoma statute "is not a relation back provision which controls the date of transfer. Rather such date is controlled specifically and solely by § 547 of the Bankruptcy Code." *In re Scoviac,* 74 B.R. 635, 637 (B.C., N.D.Fla.1987).

The perfection of a security interest is a transfer and perfection outside the ten day grace period allowed by § 547(e)(2) makes such a transfer a preference. City Finance perfected outside the ten day grace period. The Court holds that said transfer is hereby avoided. City Finance perfected within the period prescribed by Oklahoma statute, but "timely perfection under state law does not necessarily provide protection from the creation of a possible preference under the Bankruptcy Code." *In re Murray,* 27 B.R. 445 (B.C., M.D.Tenn.1983). The defendant City Finance Co. holds an unperfected security interest and its rights are inferior and subordinate to the rights of the trustee who is perfected as of the date of the filing of the bankruptcy petition pursuant to 11 U.S.C. § 544.

Judgment for plaintiff shall be entered accordingly.

AND IT IS SO ORDERED.

## ORDER SUPPLEMENTING "MEMORANDUM DECISION AND ORDER" OF OCTOBER 17, 1991.

MICKEY DAN WILSON, Bankruptcy Judge.

The Court hereby supplements its "Memorandum Decision and Order" filed October 17, 1991, to take account of additional authorities which have come to the Court's attention.

On October 25, 1991, in Case No. 91–01200–C In re Power, Adv. No. 91–0158–C Beaumont, Trustee v. GMAC, the Honorable Steven J. Covey, Chief Bankruptcy Judge in this District, issued his "Memorandum Opinion" refusing to avoid under 11 U.S.C. § 547 a transfer whereby a creditor with a security interest in a motor vehicle delivered a lien entry form to the Oklahoma Tax Commission or its agent fifteen days after the date of execution of the form. The Court held that, under Oklahoma law, the act of perfection occurred on the fifteenth day but related back to "Day One." The Court read 11 U.S.C. § 547(e)(1)(B)'s wording "is perfected" to refer to the fictional status of perfection

over a period of time, and not to the real act of accomplishing perfection at a particular moment. Hence perfection was deemed to exist on "Day One," which is "within 10 days" as required by 11 U.S.C. § 547(e)(2)(B). In so ruling, the Court relied on *In re Busenlehner*, 918 F.2d 928 (11th Circ.1991) and *In re Burnette*, 14 B.R. 795 (B.C., E.D.Tenn.1981).

Of course, in the real world perfection is actually accomplished on a particular date by doing a particular act. The "relation back" theory would have perfection exist before it occurred. Such an unreal result should occur only on clear and precise direction by statutory language or on convincing demonstration of legislative intent.

In this Court's view, the natural reading of § 547(e)(1)(B) is that perfection occurs when the last act required by State law to acquire the desired status is performed. The contrary interpretation that § 547(e)(1)(B) refers not to the real-world doing of an act but to a fictional period of time is an ingenious, but strained and unnatural, reading of the statute. For purposes of this opinion, this Court will concede that, at worst, "both interpretations are consistent with the wording of the definition," *In re Burnette*, 14 B.R. p. 801— i.e., that the statute is ambiguous. Where statutory language is ambiguous, clarification of legislative intent may and must be sought in other available sources, e.g. legislative history.

In *In re Busenlehner*, the Eleventh Circuit Court of Appeals refused to avoid as preferential a security interest perfected within a twenty-day period allowed by Georgia law. The court assumed, rather than decided, that 11 U.S.C. § 547(e)(1)(B) referred to the period deemed perfected and not to the date of the last act necessary to accomplish perfection. The court gave only glancing consideration to legislative history, declaring that "The goal of ... the 1978 Bankruptcy Reform Act was to bring preference law 'more into conformity with commercial practices and the Uniform Commercial Law.' S.Rep. No. 989, 95th Cong., 2d Sess. 87 (1977) ...," *id.* 918 F.2d p. 931. The quoted excerpt from legisla-

tive history is merely the general introductory statement to the committee report on proposed 11 U.S.C. § 547, not an infallible guide to all its intricacies; appears to refer to the proposed treatment of payment by check under § 547(c)(1), transfers in the ordinary course under § 547(c)(2), and the requirement of attachment under § 547(e)(3) which apparently adopts Uniform Commercial Code (1972) § 9–203(1)(c); and need not apply to § 547(e)(1) in particular. The court reached this result because "Debtors should not be given the ability to surprise and upset established commercial practices by filing for bankruptcy and avoiding this otherwise acceptable security interest," and to prevent "legitimate commercial practices" from being "penalized," *id.* But "Debtors" were not trying to avoid the security interest on their own behalf; rather, the bankruptcy Trustee was trying to avoid it for the sake of other creditors as a group. Moreover, most transfers attacked under § 547 are "legitimate ... established commercial practices;" it is preferential effect, not illegality or evil intent, which § 547 aims to redress. See the excellent discussion of judicial misapprehension of basic preference policy in Weisberg, "Commercial Morality, the Merchant Character, and the History of the Voidable Preference," 39 Stanford L.Rev. 3 (November, 1986). The case is also difficult to reconcile with prior 11th Circuit precedent regarding similar statutory provisions under 11 U.S.C. § 547(c)(3)(B); see *In re Busenlehner*, 98 B.R. 600, 602 (B.C., N.D.Ga.1989) citing *In re Davis*, 734 F.2d 604, 607 (11th Circ.1984).

In *In re Burnette*, the court analyzed legislative history much more thoroughly than had the Court of Appeals in *Busenlehner*, and concluded that

The legislative history shows that Congress intended for ten days to be a uniform grace period ...

[F]or Article 9 security interests the definition should mean they are perfected at the moment when the last event required for perfection under Article 9 occurs.

*It is evident that Congress did not intend for state grace periods to be rele-*

vant under the preference statute. There was to be a uniform rule throughout the nation. In any jurisdiction, a transferee was to have only ten days to perfect a transfer and thereby avoid the antecedent debt problem. Ten days was picked apparently because it corresponded to state law, but Congress did not specifically refer to grace periods under state law ...

This interpretation is consistent with Congressional intent. For Article 9 security interests, perfection would begin when the last step necessary for perfection occurred, but perfection would not relate back to an earlier step in the process of perfection,

*In re Burnette*, 14 B.R. pp. 797, 801 (emphasis added). Having *compellingly* demonstrated and candidly admitted that Congress intended a "last act" interpretation of § 547(e)(1)(B), the court then refused to follow Congressional intent. The court imposed a "period of perfection" interpretation on the statute in open disregard of Congressional intent, merely because the court found this interpretation "less troublesome," *id.* 14 B.R. p. 801. The court's disregard of known Congressional intent was clear error.

Cases such as *In re Burnette, In re Busenlehner* and *In re Power* effectively read the statutory language "within 10 days" to mean "within 10 days plus some variable period of time as may be added thereto by State laws." Such a reading is not supported by either the language of the statute or its legislative history; and does not carry out the intent of the statute and Congress. This Court finds such authorities unpersuasive, and declines to follow them. The Court's "Memorandum Decision and Order" filed October 17, 1991 is hereby reaffirmed; but the "Conclusions of Law" therein are hereby supplemented.

AND IT IS SO ORDERED.