**In re Richard K. LOKEN and Shelley R. Fox–Loken, Debtors.**

**Fred LONG, Chapter 13 Trustee, Appellant,**

v.

**JOE ROMANIA CHEVROLET, INC., Appellee.**

BAP No. OR–93–1970–MeOAs.
Bankruptcy No. 691–65371–H13.
Adv. No. 93–6038–H.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Submitted on the Briefs Jan. 20, 1994.

Decided Dec. 2, 1994.

Eric R.T. Roost, Eugene, OR, for appellant.

Ronald A. Walro, Eugene, OR, for appellee.

Before MEYERS, OLLASON and ASHLAND, Bankruptcy Judges.

## OPINION

MEYERS, Bankruptcy Judge:

### I

A car dealer perfected its security interest in a motor vehicle twelve days after the security interest became effective between the parties. The bankruptcy trustee brought an action to avoid the security interest pursuant to Bankruptcy Code ("Code") Section 547. Oregon law contains a twenty day grace period for perfection of such interests. The bankruptcy court ruled that the Oregon law was made applicable through Section 547(e)(1)(B). The trial court found the transfer of the security interest would be deemed perfected on the same date the interest was effective between the parties. Therefore, the court found in favor of the dealer on the basis that the transfer was not made on account of an antecedent debt.

We REVERSE.

### II

### FACTS

The parties stipulated to the facts. On October 19, 1991, Shelley Fox–Loken ("Loken") purchased a car from Joe Romania Chevrolet, Inc. ("Romania") and took possession of it that day. Loken signed a promissory note and granted Romania a purchase money security interest in the vehicle.

■ Under Oregon law, a security interest in a motor vehicle is perfected when a notation of the interest is made on the vehicle's certificate of title. Generally, the notation of

interest is considered made as of the date a complete application for notation is received by the Oregon Department of Motor Vehicles ("DMV"). Romania applied for such a notation. The application was marked received by the DMV twelve days after Loken took possession of the vehicle.[1] The tenth and eleventh days were not weekend days or holidays.

Loken filed for relief under Chapter 13 of the Code on December 10, 1991, and Fred Long was appointed trustee ("Trustee"). The Trustee filed an adversary proceeding against Romania alleging that the granting of the security interest was a preference under Section 547(b).

Romania did not file an answer. Instead, Romania and the Trustee entered into a stipulation narrowing the proceeding to two issues. The first was whether the security interest took effect on the date of the security agreement, October 19, under Section 547(e)(2)(A). Essentially, this issue boiled down to whether there was a transfer on account of an antecedent debt under Section 547(b)(2). The second issue was whether the transfer amounted to an enabling loan under Section 547(c)(3) which could not be avoided. The parties further waived the right to a trial and submitted the matter on the briefs.

The bankruptcy court ruled that the transfer was not made on account of an antecedent debt. *In re Loken*, 156 B.R. 660 (Or. 1993). The court noted that Oregon law gave Romania twenty days to perfect the security interest and that such perfection would then relate back if achieved in that twenty day period. Romania perfected on day twelve, and consequently, perfection was deemed to have occurred on day one, October 19, 1991. Looking to Section 547(e)(2)(A), the court found that the transfer was made on October 19, 1991, because it was perfected within ten days of the date the interest became effective between the parties. Since the transfer was made the same day the debt arose, the transfer could not have been made on account of an antecedent debt as required by Section 547(b)(2). The

---

1. The application listed Seattle First National Bank ("SeaFirst") as the secured creditor. SeaFirst subsequently assigned the security interest back to Romania.

trial court dismissed the proceeding because an essential element of the preference claim was lacking. It did not reach the issue of whether the enabling loan exception applied.[2]

## III

### STANDARD OF REVIEW

██ Questions of statutory interpretation are reviewed *de novo*. *In re Orvco, Inc.*, 95 B.R. 724, 726 (9th Cir. BAP 1989). Likewise, when a transfer occurs for purposes of Section 547 is a question of law which we review *de novo*. *In re Schuman*, 81 B.R. 583, 585 (9th Cir. BAP 1987).

## IV

### DISCUSSION

██ Section 547 allows a trustee to avoid any transfer to or for the benefit of a creditor, on account of an antecedent debt owed by the debtor, made while the debtor was insolvent, which was made within 90 days of the filing of the bankruptcy petition (or one year if the creditor is an insider) and which enables the creditor to receive more than the creditor would have received under Chapter 7. 11 U.S.C. § 547(b). The perfection of a security interest is a transfer for purposes of Section 547. 11 U.S.C. § 101(58) [54]. If a security interest is perfected more than ten days after it is given, the transfer will be treated as having been made on account of an antecedent debt. *In re Gulino*, 779 F.2d 546, 552 (9th Cir.1985). *See also Matter of Vance*, 721 F.2d 259, 262 (9th Cir.1983) (the contemporaneous exchange for value exception under Section 547(c)(1) does not apply to purchase money security interests). We must determine when the transfer of the security interest was made in order to determine if there was a transfer on account of an antecedent debt.

Section 547(e)(2) provides that:

[A] transfer is made—

(A) at the time such transfer takes effect between the transferor and the trans-

feree, if such transfer is perfected at, or within 10 days after, such time;

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or

(C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—

(i) the commencement of the case; or

(ii) 10 days after such transfer takes effect between the transferor and the transferee.

The parties do not dispute that the security interest "took effect between the transferor and transferee" on October 19, 1991, when Loken signed the security agreement and took possession of the vehicle. The issue is when the transfer was perfected for purposes of Section 547(e)(2). If the transfer of the security interest to Romania was perfected within ten days of October 19, it will be treated as having been "made" on that date pursuant to Section 547(e)(2)(A). If it was perfected outside that ten day window, after October 29, 1991, it will be considered "made" at the time it was perfected under Section 547(e)(2)(B).

Determining perfection requires us to turn to Section 547(e)(1)(B), which states that:

(1) For purposes of this section—

(B) a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

██ In other words, Romania's security interest was perfected when another creditor could not acquire a superior judicial lien. " 'What constitutes a transfer and when it is complete' is a matter of federal law." *Barnhill v. Johnson*, —— U.S. ——, ——, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992) (quoting *McKenzie v. Irving Trust Co.*, 323 U.S. 365, 369–70, 65 S.Ct. 405, 407–08, 89 L.Ed. 305 (1945)). However, federal law does not provide the answer to how a transferee protects its rights against a judicial lien creditor. We must turn instead to the applicable state

---

**2.** Both Section 547(e) and Section 547(c)(3) focus on the time a transfer is perfected. Our analysis of "perfection" under Section 547(e) is equally applicable to the use of that term in Section 547(c)(3).

law to determine the method for perfecting a security interest as against a judicial lienholder. *Matter of Hamilton*, 892 F.2d 1230, 1232 (5th Cir.1990).

In Oregon, a creditor perfects its interest in a motor vehicle by applying for notation of the security interest on the certificate of title. O.R.S. § 803.097(1). If the application contains all the necessary information, and is accompanied by all of the required documentation, "the security interest is perfected as of the date marked by the division on the application." O.R.S. § 803.097(3).

■ We must also determine what effect to give O.R.S. § 79.3010, Oregon's version of Uniform Commercial Code § 9–301, which provides that a secured party perfecting a purchase money security interest within twenty days of the debtor receiving the collateral, takes priority over the rights of a lien creditor arising within that period. By this statute, Oregon has expanded the time period for perfection of purchase money security interests from that provided in the Uniform Commercial Code. Romania's application was date marked October 31, 1991. This was within twenty days of October 19, when Loken received possession of the collateral. Under the trial court's analysis, perfection should be related back and treated as having occurred on October 19.

This concept, that state law "relation-back" statutes should be applicable, has led to a split in authority. There is certainly support for the bankruptcy court's position. Two circuit courts have taken this stance. *See, In re Hesser*, 984 F.2d 345, 349 (10th Cir.1993); *In re Busenlehner*, 918 F.2d 928, 931 (11th Cir.1990). *See also In re Burnette*, 14 B.R. 795, 801 (Bankr.E.D.Tenn.1981). There is also ample support for the contrary position. *See In re Hamilton, supra*, 892 F.2d at 1235; *In re Holloway*, 132 B.R. 771, 773 (Bankr. N.D.Okl.1991); *In re Holder*, 94 B.R. 395, 398 (Bankr.M.D.N.C.1988); *In re Scoviac*, 74 B.R. 635, 637–38 (Bankr.N.D.Fla.1987).

The Panel is in the fortunate position of being able to consider two recent excellent opinions from bankruptcy courts in the Ninth Circuit which clearly set forth the arguments of the two schools of thought. On the one hand, there is Judge Higdon's opinion below which holds that the perfection should relate back. On the other hand, there is Judge Pappas's opinion in *In re Walker*, 161 B.R. 484, 501 (Bankr.D.Idaho 1993), *aff'd* No. CV93–0498–E, 1994 WL 739698 (D.Idaho 1994), published after the ruling below, which holds that the state relation-back statute is inapplicable. We respectfully disagree with the ruling of the bankruptcy court in the instant case, finding instead that we are more persuaded by Judge Pappas's opinion and those cases which hold that state law grace periods are inapplicable under Section 547(e). We base our holding on two factors. First, we believe the language of the statute itself compels this result. In that respect only, we respectfully disagree with Judge Pappas who found the language of the statute to be ambiguous. Second, it is undisputed that Congress drafted this Section with this result in mind.

The thought that the language of Section 547(e)(1) is ambiguous is discussed in *Walker, supra*, 161 B.R. at 492–93. The word "perfected" could refer to the taking of the last step necessary to perfect an interest. Under this definition, Romania's security interest was perfected when the application for notation was marked by the DMV. Another argument is that "perfected" might refer to the status of the security interest during a period of time. 161 B.R. at 493. If that were the case, it could be argued that Romania's security interest was perfected throughout the whole period from October 19 to October 31 because of the effect of the Oregon grace period.

■ Looking at the plain language of Section 547(e)(1), taken as a whole, we find that an ambiguity does not exist. The term "perfected" must be viewed in the context of the rest of the Section and with regard for the usual usage of that term. Section 547(e)(1) states that a transfer is perfected when a creditor "cannot" acquire a superior interest. This Section directs courts to determine when a judicial lienholder is not able to obtain a position superior to that of the transferee in question. *See In re Lane*, 980 F.2d 601, 625 (9th Cir.1992) (applying Section 547(e)(1)(A)—the definition of transfer is "unambiguous;" a transfer is perfected when

a subsequent purchaser cannot acquire a superior interest). If a judicial lienholder could still obtain superior rights, then the transfer has not been perfected such that the lien holder "cannot" obtain superior rights. Essentially, under Section 547(e)(1), the court must determine the moment in time when a judicial lien creditor is barred from obtaining superior rights. This is a natural reading of the complete Code Section. The courts that have reached a different conclusion have taken the word "perfected" out of the context of the remaining words of the statute. We hold that a creditor on a simple contract is barred from acquiring a judicial lien superior to the interest of the transferee when the transferee takes the last step required by state law to perfect its security interest. Until that last step is taken, other creditors could potentially obtain superior rights. Until this last step, it is not possible to say that other creditors "cannot" obtain superior rights.

 This interpretation, that the term "perfected" refers to that single date, or moment in time, when the state perfection statute is satisfied, is also consistent with the general usage of the term. *See In re Holloway, supra*, 132 B.R. at 774 ("[I]n the real world perfection is actually accomplished on a particular date by doing a particular act."). A perfect example is the Oregon statute at issue here. The Oregon statute requires that an application for notation of the interest on the certificate of title be sent to the DMV. The application must be accompanied by certain documentation. The application is marked when it is received by the DMV. The final act required by the Oregon statute is the submission of a completed application and supporting documentation. If everything is in order, "the security interest is *perfected* as of the date marked by the [DMV] on the application." O.R.S. § 803.097(3) (emphasis added). The last act required by Oregon law is the submission of a completed application and supporting documentation to the DMV. Once it is confirmed that this has been done properly, Oregon treats this last required act as the moment the security interest is perfected. This is

simply how the term perfected is used in common usage.

 Since this issue has produced such divergent views we also will look at the history of this Code section and the legislative intent behind it. The first thing we note is that Congress intended to harmonize the preference statute with the Uniform Commercial Code.

> [T]he adoption of the Uniform Commercial Code radically altered the terminology of secured transactions, and the courts have applied the new terminology to the preference sections, which uses certain of the same words as the Uniform Commercial Code but in different senses and with different meanings. It is time to bring the two statutes into harmony, and H.R. 8200 does that by adopting the more modern terminology of the Uniform Commercial Code, and providing for specific treatment of transfers by the Code.

H.Rep. No. 595, 95th Cong., 1st Sess. 179 (footnotes deleted).[3] This statement is consistent with our holding that Section 547(e)(1) must be read in accordance with general commercial usage.

 The Bankruptcy Act ("Act") set a twenty-one day time limit for perfection of transfers. Under Section 60(a)(7) of the Act, the time period would be shorter if state law provided for less time to perfect. However, while state law might provide for less time, Section 60(a)(7) clearly prohibited the use of a state statute to expand the twenty-one days maximum time limit. Congress's reason for changing the timing of Section 60(a)(7) to the ten day time period of Code Section 547(e)(2) is clear. Congress made the change to create a uniform rule throughout the country and it did not intend for state grace periods to be relevant under Section 547. *In re Burnette, supra*, 14 B.R. at 801. Congress set the grace period at ten days to correspond with the grace period provided under the Uniform Commercial Code. *See In re Walker, supra*, 161 B.R. at 495 (quoting White and Summers, *Uniform Commercial Code* § 25-7, 447–48 (3d ed. 1988)). *See also Burnette, supra*, 14 B.R. at 800. Congress

---

**3.** The footnotes in the original text reference Sections 547(e) and 547(c)(3), (4) and (5).

could have provided that each state's own version of Uniform Commercial Code Section 9–310(2) would be applicable. Then states, such as Oregon, could have adopted changes as they saw fit. However, Congress did not do this. Instead, it created one uniform grace period of ten days.

We also take note of Congress's enactment of the Bankruptcy Reform Act of 1994, which was signed into law on October 22, 1994.[4] The Reform Act now allows a creditor twenty days to perfect its purchase money security interest while still qualifying for the enabling loan exception found in Section 547(c)(3).[5] By this change, Congress acknowledged that states were enacting grace periods greater than ten days for such security interests. Congress could have deferred completely to the states by incorporating each state's own timing into the Code. Instead, it chose to continue having the Code itself dictate the applicable grace period. Furthermore, Congress did not amend Section 547(e)(1), which provides the definition for "perfection" as used in Section 547.

■ Even under the Reform Act then, if a creditor perfects its interest more than ten days after the transfer is effective between the parties, the transfer will be deemed made on the date of perfection, and a preference may therefore exist. If it is perfected within ten days, the transfer is deemed made as of the day it became effective between the parties. Under such circumstances, there will have been no transfer on account of an antecedent debt, and hence, no preference. The only difference under the new law is that lienholders asserting purchase money security interests, who perfect their interest within twenty days of the debtor taking possession of the property in question, may now be able to interpose Section 547(c)(3) as a defense to a preference action.[6] For all purposes of Section 547 though, be it to determine if there was a transfer on account of an antecedent debt or if the enabling loan exception applies, perfection is still determined pursuant to Section 547(e), and is still determined without any reference to state grace periods.

■ The Panel now applies this law to the facts at hand. The parties agree that Romania's application for a notation of the security interest on the certificate of title was marked October 31, 1991. Clearly then, since there is no other mark on it, the application was received by the DMV on that date, it contained all the required information and it was accompanied by all necessary documentation. The security interest was perfected on October 31, 1991. *See* O.R.S. 803.097(3). On that date, Romania cut off any possibility that a judicial lien creditor could obtain superior rights in the collateral. The relation back effect of O.R.S. § 79.3010(2) is inapplicable. Since the interest was perfected twelve days after the transfer took effect between the parties, Section 547(e)(2)(A) is not applicable. Instead, pursuant to Section 547(e)(2)(B) the transfer to Romania is deemed to have been made on October 31, 1991. Consequently, the transfer of the security interest to Romania was made on account of an antecedent debt.

## V

## CONCLUSION

■ The plain language of Section 547(e)(2) provides that a secured creditor will have a ten day grace period for perfecting its security interest. Pursuant to Section 547(e)(1), courts must look to state law to determine the moment in time in which the last step is taken to perfect a security interest. Varying grace periods provided for un-

---

4. Bankruptcy Reform Act of 1994, Pub.L. No. 103–393, 108 Stat. 4106 (codified as amended in various sections of 11 U.S.C.).

5. Section 547(e)(2)(A) also was amended, but only to make specific reference to Section 547(c)(3). Section 547(e)(2) now provides that a transfer is made—

 (A) at the time such transfer takes effect between the transferor and transferee, if such

transfer is perfected at, or within 10 days after, such time, except as provided in subsection (c)(3)(B). (Language added by amendment is underscored).

6. The Bankruptcy Reform Act applies only to cases filed after its enactment. *See* Section 702 the Bankruptcy Reform Act of 1994. Therefore, the change to 20 days is of no use to Romania in this action.

64

der state law are irrelevant. If the last necessary act was done within the ten day period of Section 547(e)(2)(A), the transfer will have been made when it became effective between the parties. If it is made after the ten day period, it will have been made when perfected under Section 547(e)(2)(B).

The security interest was effective between Loken and Romania on October 19, 1991. The DMV stamped Romania's application as received on October 31, 1991. The security interest was perfected on that date. This was beyond the ten day grace period allowed. Therefore, under Section 547(e)(2)(B), the transfer of the security interest is treated as made on October 31, 1991, and not October 19, 1991. Consequently, the transfer was made on account of an antecedent debt under Section 547(b)(2) and that essential element of the preference claim was met.

REVERSED.