**In re W.T. VICK LUMBER COMPANY, INC., Debtor.**

**W.T. VICK LUMBER COMPANY, INC., Plaintiff,**

v.

**Ray CHADWICK, Defendant.**

**W.T. VICK LUMBER COMPANY, INC., Plaintiff,**

.v.

**Denny VICK, Defendant.**

**W.T. VICK LUMBER COMPANY, INC., Plaintiff,**

v.

**Alfred VICK, Defendant.**

Bankruptcy No. 93–71060.
Adv. Nos. 94–70581 to 94–70583.

United States Bankruptcy Court,
N.D. Alabama,
Western Division.

March 15, 1995.

Albert Lewis, III and Glen F. Harvey, Tuscaloosa, AL, for debtor-in-possession.

Herbert Newell, III, Tuscaloosa, AL, for defendants.

Helen H. Ellis, Tuscaloosa, AL, Estate Analyst.

## MEMORANDUM OF DECISION

GEORGE S. WRIGHT, Chief Judge.

This matter came before the court on three adversary proceedings filed by the debtor-in-possession, W.T. Vick Lumber Company, Inc., seeking to avoid transfer of security interests to officers/shareholders as preferential transfers under 11 U.S.C. § 547(b). The parties stipulated to the material facts of the case. The court has considered the facts stipulated, the documents proving the transfers in the light of applicable law and finds that the challenged transfers, securing claims totalling **$114,800.00 in principal,** must be **AVOIDED** under Section 547, and the challenged claims classified as **UNSECURED.**

### FINDINGS OF FACT

W.T. Vick Lumber Company, Inc., filed for Chapter 11 reorganization in this court on May 21, 1993. The company had been formed as a corporation in 1989 after a "long and thriving existence as a partnership." *See* Third Amended Disclosure Statement of W.T. Vick Lumber Company, Inc., BK Doc. 171.

The defendants in this action are the three incorporating shareholders, including the late Alfred Vick as president (AP 94–70583); Ray Chadwick, as vice-president (AP 94–70581) and Denny Vick, Alfred Vick's son, as secretary (AP 94–70582). The company was named for Alfred Vick's brother, W.T. Vick, the founder of the business. W.T. Vick was deceased by its incorporation. (BK Doc. 171).

When it was in operation, W.T. Vick Lumber was in the business of purchasing wood from suppliers and processing it into lumber materials for customers, operating a dry kiln, a sawmill, a planner, a treating plant with dry kiln, a trimmer and sorter, and other equipment.

At this writing, the company was closed down, with security on the premises. There was one employee, a bookkeeper, left on payroll.

W.T. Vick's Disclosure Statement said the major factor precipitating its bankruptcy filing was a sharp decline in sales—from $14.6 million in 1991 to $8.4 million in 1992 to an eventual $4.5 million in 1993.

The challenged transactions all took place in the third quarter of 1992.

"Increased pressure from creditors began to develop more noticeably by the end of the fourth quarter of 1992. The continued need to pay creditors was enormously at odds with the Company's ability to meet those needs," the statement said.

When negotiations with creditors broke down, the statement said, the company filed this Chapter 11 on May 21, 1993.

The transfers of security interests challenged in these three lawsuits were in certain items of collateral loans filed as secured claims in the bankruptcy. *See* Exhibits A to the Defendants Brief in Opposition to Debtor–In–Possession's Complaint to Avoid Preferential Transfer, AP 94–70581 Doc. 9, AP 94–70582 Doc. 10, and AP 94–80583 Doc. 10. The Court is attaching the document summarizing the loan/perfection timetable of the challenged transfers as Appendix A to this Memorandum of Decision, since both parties have submitted it as Joint Exhibit 1 to their stipulation.

The parties agreed that "Joint Exhibit 1 accurately reflects the time between the date of each loan and the perfection of each respective security interest". (There appear to be some slight variance between the summary and the documents on the actual proofs of claim—but the difference is not material.)

Defendant Ray Chadwick's Claim No. 80 sought $16,476.95, including interest, for a

loan of $15,000.00 made to the company on July 17, 1992. Documentary evidence agreed to by the parties in their stipulation shows that Chadwick claimed a perfected security interest in a 1975 Windham forklift and a 1966 Taylor forklift. A Uniform Commercial Code financing statement (UCC–1) was filed with the Alabama Secretary of State's Office on August 11, 1992—25 days from the date of the loan.

Defendant Denny Vick's amended Claim No. 79 (providing documentation of security for the original Claim No. 77) was also for $16,476.95 (including interest) for a $15,-000.00 loan made July 17, 1992. Denny Vick claimed a security interest in a 1988 Mack truck and a 1979 Fontaine trailer. According to the exhibits to the parties' Joint Stipulation of Facts, the Alabama Department of Motor Vehicles received the applications to list Denny Vick as lienholder on the equipment on August 21, 1992—35 days after the loan was made.

Defendant Alfred Vick, now deceased, filed a three separate claims against the bankruptcy estate for secured debt totalling $270,-431.84, plus interest, (figure from AP 94–70583 Doc. 3, Answer to Complaint).

The debtor in possession is challenging the secured status of two of the claims—totalling $84,800.00 with no interest. The status of Alfred Vick's secured Claim No. 73 for $184,-631.84 is not being challenged by the debtor-in-possession and thus is not before the court. The lawsuit challenges Claims Nos. 71 and 72.

Alfred Vick's Claim No. 72 was filed as a secured claim for $66,800.00 with a security agreement dated July 24, 1992. The debtor-in-possession is challenging security interests on a 1988 Mack truck, application for title made August 21, 1992, 28 days after loan; a 1985 Mack truck, title application, August 28, 1992, 35 days after loan; a 1979 International truck for which no application was made and a 1981 International truck, title application, August 21, 1992, 28 days after loan. (See parties joint exhibit and stipulation, Exhibits A to defendants briefs.)

The challenged collateral for the first loan also includes four 1979 Fontaine trailers; a Yates A20 B27009 planner; and four Hyster forklifts, model years 1970, 1971, 1973 and 1979. A UCC–1 filed with the Secretary of State's Office August 11, 1992 is attached to the claim. There do not appear to be title documents proving any perfection on the trailers in the file.

Alfred Vick's Claim No. 71 is for an $18,-000 loan made on August 6, 1992, with a security agreement also signed August 6, 1995. The security agreement for this loan lists as collateral:

1 V–54 Resawn and Motor
1 Blow Pipe and Electric Motor
All Electric Motors and Starters at Planner
1 1979 Fontaine Trailer Serial Number 32753.

Attached to Claim No. 71 is a copy of a UCC–1 on the equipment stamped into the Alabama Secretary of State's Office September 1, 1992, 26 days after the security agreement was executed.

In the parties' Joint Stipulation of Facts, the debtor corporation, as plaintiff, and the three defendants agree that "Each of the vehicles subject to the security interest of Denny Vick and Alfred Vick were, at the time of the transfer of the respective security interest, titled to W.T. Vick Lumber Company, a partnership composed of Alfred Vick, Denny Vick and Ray Chadwick." (The Stipulation was filed as AP 94–70581 Doc. 13, AP 94–70582 Doc. 14 and AP 94–70583 Doc. 14 on September 22, 1994.)

The parties further stipulated that each of the defendants were "insiders" for the purposes of 11 U.S.C. § 547(b)(4)(B). 11 U.S.C. § 101(30)(B) classifies officers of corporate debtors as "insiders" of the debtor under the Bankruptcy Code.

They also stipulated that W.T. Vick Lumber Company, Inc., has proven the following elements of a preferential transfer under Section 547(b):

8.1 Each transfer was made to or for the benefit of a creditor.

8.2 Each transfer occurred while the Debtor/Plaintiff was insolvent.

8.3 Each transfer was made between 90 days and one year before the date of the filing of the petition.

8.4 Each transfer enabled each Defendant to receive more than each Defendant would have received if this bankruptcy proceeding were a proceeding under Chapter 7 of the Bankruptcy Code.

The debtor-in-possession filed these lawsuits against the three officers of the corporation on May 11, 1994. All three complaints challenge the validity of the security interests claimed by the officers as avoidable preferential transfers under 11 U.S.C. § 547(b).[1]

On September 20, 1994, the three defendants had filed Amended Answer(s) to Complaint asserting what is known as the "contemporaneous exchange for new value" defense to an action to avoid a preferential transfer. (Amended Answer AP 94–70581 Doc. 7, AP 94–70582 Doc. 8 and AP 94–70583 Doc. 8.)

The amended answer states of this affirmative defense:

The transfer(s) which Plaintiff seeks to avoid pursuant to 11 U.S.C. § 547(b) is specifically excepted from recovery pursuant to § 547(c)(1)(A) and (B). Defendant hereby asserts that the transfer in question was intended to be a contemporaneous exchange for new value and was in fact a substantially contemporaneous exchange.

1. **11 U.S.C. § 547(b) lists the elements that must be present for a trustee to avoid a preferential payment:**

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
(1) *to or for the benefit of a creditor;*
(2) *for or on account of an antecedent debt* owed by the debtor before such transfer was made;
(3) made *while the debtor was insolvent;*
(4) made—
(A) *on or within 90 days* before the date *of the filing of the petition;* or
(B) *between ninety days and one year* before the date *of the filing of the petition, if such creditor* at the time of such transfer *was an insider;* and
(5) that *enables such creditor to receive more than such creditor would receive if—*
(A) *the case were a case under chapter 7 of* this title;

The parties also agreed that all issues of material fact had been stipulated to, leaving only legal issues for this court to decide. The court took the cases under submission for decision on the stipulation, pleadings and briefs of the parties on October 17, 1994.

## CONCLUSIONS OF LAW

The parties in this case have agreed that W.T. Vick Lumber has met its burden of all the elements of a Section 547(b) preference—except for one, that the perfection of these security interests was for an "antecedent debt" as required by Section 547(b)(2).

The defendants, Chadwick, Denny Vick and the late Alfred Vick, contend that they pumped needed money (new value) into the faltering corporation to pay bills, in return for the security interests granted in company property. They contend the debtor company and its officers intended these loans to be "contemporaneous exchange(s) for new value" and that "in fact" the loan and perfection of the security interests were "substantially contemporaneous exchange(s)" under Section 547(c)(1).

So the only legal question is whether or not these transfers were "substantially" contemporaneous with the underlying loan transaction § 547(c)(1),[2] which would protect the claims secured status from avoidance by the debtor-in-possession.

(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title. (emphasis added)

2. The parties have stipulated that *two* legal questions remain:

12.1 Whether the transfers were made with respect to an antecedent debt, or a contemporaneous exchange for new value.
12.2 Whether the debtor had a property interest in the property transferred at the time of each transfer.
In the court's view, it is clear that when the transfers were made, the debtor business had an interest in the property in question. The only legal question left is whether the security interests were for "antecedent" debt under Section 547(b)(2), as the debtor-in-possession contends; or a "contemporaneous exchange for new value," the affirmative defense under Section 547(c)(1) by the corporate officers/creditors.

## I.

*Anything beyond 10 to 20 days is outside the limits for definition as a "contemporaneous exchange" for value given. It must be viewed as an "antecedent" debt.*

**A. To be sheltered under Section 547(c)(1), a perfection of a loan must be *factually* "contemporaneous" with the attachment of the loan it secures.**

The shelter from avoidance provided by Section 547(c)(1) has two parts:

**Section 547(c)(1)(A) and (B) provide:**

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) *intended by the debtor and the creditor* to or for whose benefit such transfer was made *to be a contemporaneous exchange for new value* given to the debtor; and

(B) *in fact a substantially contemporaneous exchange;* ... (emphasis added)

(Section 547(c)(1)(B) preserves the rule of *Dean v. Davis,* 242 U.S. 438, 37 S.Ct. 130, 61 L.Ed. 419 (1917).)

**B. Two views have been taken on how much time may elapse between attachment and perfection of a collateral interest under Section 547(c)(1).**

Two lines of cases have developed on how much time may elapse between a loan and perfection of the collateral interest securing it:

1. *A strict time limit:*

This majority view is that Congress clearly intended to differentiate between genuinely contemporaneous transactions (frequently cash) under Section 547(c)(1), purchase money or "enabling" loans under the Section 547(c)(3)[3] exception to avoidance and other transactions.

Further, Section 547(e)(2)(A) and (B) define the "relation-back" periods for most secured transactions being considered under Section 547(c)(1). Section 547(e)(2)(B) provides that a perfection made more than 10 days after attachment of the transaction it secures may not "relate back" to attachment. The transfer is deemed made at the time of perfection.

*Wachovia Bank and Trust Company, N.A. v. Bringle (In re Holder),* 892 F.2d 29 (4th Cir.1989) held that Section 547(c)(1) was inapplicable to protect a purchase money security interest perfected more than 10 days after the debtor received possession of the collateral:

"Four courts of appeals have addressed this question, and all have held that § 547(c)(1) does not apply to purchase money security transactions perfected more than 10 days after the debtor receives possession of the collateral. *See In re: Tressler,* 771 F.2d 791 (3rd Cir.1985); *In re: Davis,* 734 F.2d 604 (11th Cir.1984); *In re Arnett,* 731 F.2d 358 (6th Cir.1984); *In re Vance,* 721 F.2d 259 (9th Cir. 1983). ..."

*In re Holder,* 892 F.2d 29 (4th Cir.1989) at p. 31.

Section 547(c)(1) does not protect purchase money security interests or collateralization of enabling loans. The section is intended to

---

**3. 11 U.S.C. § 547(c)(3) provides:**

The trustee may not avoid under this section a transfer—
(3) that creates a security interest in property acquired by the debtor—
(A) to the extent such security interest secures new value that was—
(i) given at or after the signing of a security agreement that contains a description of such property as collateral;
(ii) given by or on behalf of the secured party under such agreement;
(iii) given to enable the debtor to acquire such property; and

(iv) in fact used by the debtor to acquire such property; and
(B) that is perfected on or before (10) *20* days after the debtor receives possession of such property.
(Congress amended § 547(c)(3)(B) in the Bankruptcy Reform Act of 1994 to replace the 10-day period with a 20-day period. That brought the code into conformity with Uniform Commercial Code relation-back periods for purchase money security interests and for certificate of title perfection in most states. The new code is effective for bankruptcy cases filed on or after October 22, 1994.)

differentiate between a genuine contemporaneous transaction (cash and perfection in one transaction) and after-the-fact perfection designed to shelter otherwise preferential transfers from the bankruptcy trustee or debtor-in-possession.

Well-known bankruptcy authorities also emphasize any attachment/perfection gap under Section 547(c)(1) was intended by Congress to be very narrow.

*Norton Bankruptcy Law and Practice 2d* states:

> If the delay in the transfer resulted from *delayed recordation* or other acts to perfect an interest, it is necessary to consider the effect of the 10–day grace period for perfection. If the interest is perfected within 10 days of creation, there is no preference since, under Code § 547(e)(2), the transfer relates back to the day it became effected between the parties. Code § 547(c)(1) would not apply because there was no antecedent debt. *If the perfection was delayed more than 10 days, the question is whether Code § 547(c)(1) provides protection for delay beyond the 10–day grace period.* Some courts have held that the general terms of Code § 547(c)(1) should yield to the specific protections embodied in the 10–day grace period. Other courts have focused on the parties' intentions. The problem with this view is the difficulty courts have in either determining intent or fixing a limit in allowing late perfection. *Since Code § 547(c)(1)(B) requires the transfer in fact to have been a contemporaneous exchange, it seems appropriate for the courts to adopt the federal standard of 10 days as the limit for post-closing perfection, except in exceptional circumstances where the delay could not be avoided.* (Emphasis added)

3 William L. Norton, III, *Norton on Bankruptcy Law and Practice 2d*, § 57:13, at pp. 57–64 and 57–65 (1994).

Further, Epstein, Nickles & White's *Bankruptcy* provides:

> Another suggested bench mark is that "[o]rdinarily, a [non-purchase money] security interest must be perfected within ten days * * * * for the transfer of the security interest to be substantially contemporaneous." *Otherwise, non-purchase money interests would be handled more favorably than purchase money interests under section 547(c)(3), which would create an anomaly because the latter are generally favored over the former.*

A very important point to remember is that in measuring the gap, the time of the transfer is determined according to the usual rule of section 547(e) which deems that a transfer is made when the transfer is perfected. Suppose, for example that on May 1 bank makes a loan to a farmer, D, to cover crop expenses. At the very same time D grants bank a security interest in the crops because the parties intended a secured transaction and also intended that making the loan and providing collateral would be contemporaneous. The security interest actually attaches on the same day the loan is made. Bank delays, however, until October 1 to perfect its security interest. Thus, for the purposes of both section 547(b) and the section 547(c)(1) exception, the gap between the loan (which is the value the bank gave and the debt D incurred) and the transfer is five months. The debt for which the transfer was made is clearly antecedent, and the exchange is clearly not substantially contemporaneous.

On the other hand, the transfer would have been perfected if the bank had perfected within ten days after the security interest attached. In this event, because of the exceptional rule of section 547(e), the transfer would be deemed to have been made when the security interest attached, which was on the same day the loan was made. The creation of the security interest would have been for an antecedent debt if the interest attached after the loan was made; but the exchange, having occurred on the very same day, would certainly have been substantially contemporaneous as the parties intended and thereby would have been saved by section 547(c)(1).

Consider now a case that falls between the preceding two problems. *Suppose that the bank perfected only 11 days after the time the loan was made and the security inter-*

*est was created.* The transfer in exchange for the loan would be deemed to have occurred on the date of perfection; yet, the gap is only 11 days. *Nevertheless, the authorities generally hold that, on these facts, even a 11–day delay is too long to conclude that the exchange was substantially contemporaneous. Indeed, they conclude that in any case in which the transfer is not perfected in compliance with the exceptional, ten-day rule of section 547(e), the section 547(c)(1) exception is altogether inapplicable and cannot save the transfer under any circumstances. The essential reasoning is that applying the exception in such a case (where perfection occurred more than ten days after the transfer was effective between the parties) would offend the secondary purpose of section 547 to punish and discourage secret conveyances, as expressed in the rules of section 547(e).* (emphasis added)

1 David G. Epstein, Steven H. Nickles & James J. White, *Bankruptcy* § 6–26, pp. 604–605 (1992).

### 2. *A flexible standard:*

The only case that proposes a flexible standard for contemporaneous exchange *in fact* is *Telecash Industries, Inc. v. Universal Assets (In re Telecash Industries )*, 104 B.R. 401 (Bankr.D.Utah 1989).

### C. The 10–day time limit of 11 U.S.C. § 547(e)(2)(A) and (B) generally controls on the non-purchase money security interests in property.

█ The controlling section for non-certificate of title law, non-purchase money perfection is 11 U.S.C. § 547(e)(2)(A) and (B) which provide:

(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made—

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after; such time, *(except as provided in subsection (c)(3)(B); . . .* The last, underlined phrase was added to the Code by the Bankruptcy Reform Act of 1994 which is only effective for cases filed on or after its effective date of October 22, 1994.)

(B) *at the time such transfer is perfected, if such transfer is perfected after such 10 days;* . . . (emphasis added)

It should be noted that Congress elected to change the former 10–day period in Section 547(c)(3) to 20 days in the Bankruptcy Reform Act of 1994. But it left the relation-back period of Section 547(e)(2)(A) and (B) at 10 days.

In fact, it added a phrase to Section 547(e)(2)(A) ("except as provided in subsection (c)(3)(B)") to make it clearer that this section does not deal with the special protection granted to purchase money secured creditors in Section 547(c)(3).

None of the UCC perfections in these cases were purchase-money or "enabling loans" to be taken out of the operation of Section 547(e)(2)(A) and (B) by Section 547(c)(3). Therefore, the 10–day period of Section 547(e)(2)(A) and (B) defines for this court what Congress intended as the longest gap allowed between attachment and perfection for "contemporaneous" exchanges.

### D. Under binding precedent in the Eleventh Circuit, the 20–day perfection period of Alabama's Certificate of Title Law (*Ala.Code* § 32–8–61 (1975)) controls the definition of "contemporaneous" for security interests perfected by certificate of title.

█ Many of the non-purchase money security interests challenged in Vick required perfection under Alabama's Certificate of Title law which has a 20–day period for relation-back to the time the security interest was created (attachment).

*Code of Ala.* § 32–8–61 (1975) provides the following on perfection by listing as lienholder on certificates of title:

### § 32–8–61. Perfection of security interests.

(a) Unless excepted by this section, a security interest in a vehicle for which a certificate of title is required by the terms of this chapter is not valid against creditors of the owner or subsequent transferees or lien-

holders of the vehicle unless perfected as provided in this article.

(b) *A security interest is perfected by the delivery to the department of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the date of his security agreement and the required fee. It is perfected as of the time of its creation if the delivery is completed within 20 days thereafter, otherwise, as of the time of the delivery.* (emphasis added)

The Eleventh Circuit held in *General Motors Acceptance Corporation v. Busenlehner (In re Busenlehner)*, 918 F.2d 928 (11th Cir. 1991) that despite the seeming 10–day limit of Section § 547(e)(2)(B), the creditor could use Section 547(e)(1)(B)[4] to look to Georgia law which, like Alabama law, allowed relation back if the title delivery was completed in 20 days.

**E. This court adopts the strict requirement of the 10 or 20–day measure of "substantially contemporaneous" under Section 547(c)(1)(B).**

As noted earlier, Section 547(c)(1) has two prongs. The first is set out in § 547(c)(1)(A)

**4. 11 U.S.C. § 547(e)(1)(B) provides:**

(e)(1) For the purposes of this section—
(B) a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

The *Busenlehner* opinion is in contradiction to that expressed in the earlier *Gower v. Ford Motor Credit Company (In re Davis)*, 734 F.2d 604 (11th Cir.1984). *Busenlehner* did not mention the *Davis* case.

There is a split among appeals courts on whether the 10–day period of 11 U.S.C. § 547(e)(2) preempts the 20–day period allowed for relation-back of security interests under some state laws.

*Busenlehner* in 1990 and *Webb v. General Motors Acceptance Corp. (In re Hesser)*, 984 F.2d 345 (10th Cir.1993) took the position that state law should control relation-back, despite potential conflict with Section 547(e)(2).

Taking the opposite view—that federal law should prevail—are *Thornton Ford, Inc. v. Fitzpatrick (In re Hamilton)*, 892 F.2d 1230 (5th Cir.1990) and the recent, *Long v. Joe Romania Chevrolet, Inc. (In re Loken)*, 175 B.R. 56 (9th Cir. BAP 1994).

and involves intent. Proof of intent is always difficult and nebulous—if not impossible.

■ The second prong, at Section 547(c)(1)(B), requires that the transfer *in fact* be contemporaneous. The second prong cannot be judged on a floating measure varying from creditor to creditor, case to case without defeating the prohibition against secret liens embodied in Section 547(e).

■ It should not be subject to nebulous proof. Consequently, this court will adopt the strict measure of whether a security interest transfer is "substantially contemporaneous" with the underlying transaction.

The court will apply the 10–day period of Section 547(e)(2)(B) to non-purchase money security interests not perfected via certificate of title and the 20–day period of *Ala.Code* § 32–8–61(b) for certificate of title perfection as required by *Busenlehner*.

■ It seems clear to this court that Congress did not intend to give non-purchase money security interests priority over purchase money security interests in bankruptcy. That is what would be done if such creditors were allowed more unofficial "relation-back" room than purchase money lenders.

The *Loken* decision pointed out Congress' adoption of 20–day limits for purchase money security interests and its concurrent failure to change the 10–day periods of Section 547(e) in the Bankruptcy Reform Act of 1994 which took effect October 22, 1994:

> *Even under the Reform Act then, if a creditor perfects its interest more than ten days after the transfer is effective between the parties, the transfer will be deemed made on the date of perfection, and a preference may therefore exist.* If it is perfected within 10 days, the transfer is deemed made as of the day it became effective between the parties. Under such circumstances, there will have been no transfer on account of an antecedent debt, and hence, no preference. The only difference under the new law is that lienholders asserting purchase money security interests, who perfect their interest within twenty days of the debtor taking possession of the property in question, may now be able to interpose Section 547(c)(3) as a defense to a preference action. (emphasis added)

*In re Loken*, 175 B.R. 56 (9th Cir. BAP 1994) at p. 63.

■ Therefore, this court adopts the rule that to be considered contemporaneous rather than antecedent, a non-purchase money, non-certificate of title security interest must be perfected within 10 days of its creation.

■ Further, where the security interest is perfected by certificate of title, only if perfection comes within the 20–day period allowed by Alabama state law, will the transfer be deemed "contemporaneous" rather than "antecedent."

While counsel for the defendants has urged the court not to adopt a bright line rule in such case, a bright line is needed. Otherwise the Congressional intent would not be served and abuse of the system would be encouraged.

## II.

*The perfection (transfer) of the security interests in these cases came too late to be considered "contemporaneous" with the loans they secure. They are for antecedent debts and constitute avoidable preferences under 11 U.S.C. § 547(b).*

■ It is apparent that the transfers of security interests in these cases were made to secure antecedent debts, not as transactions "substantially contemporaneous" with the underlying loans.

The transfers set out in Exhibit "A" can be divided into two categories:

**A. Transfers requiring perfection by filing UCC–1s:**

Section 547(e)(2)(B) requires that the transactions under the Uniform Commercial Code be perfected within 10 days after the transfer in non-purchase money transactions. Importantly, that law apparently is not in flux or imminently subject to change. For in the 1994 amendments, Congress elected to *leave* the 10–day limits in Section 547(e)(2)(A) and (B) while *changing* the former 10–day limit for purchase money security interests to 20 days.

In these cases, only Claim No. 71 (Exhibit "A" to Exhibit "A") is even within 20 days of its security agreement—at 18 days. So the UCC perfections cannot be considered "sub-stantially contemporaneous" with attachment. They were made to secure antecedent debts.

**B. Perfection by delivery of title application to the Department of Motor Vehicles under *Ala.Code* § 32–8–61(b):**

■ This court is bound by *General Motors Acceptance Corporation v. Busenlehner* (*In re Busenlehner*), 918 F.2d 928 (11th Cir. 1991) which allowed use of state law to define the relation-back period on certificate of title transactions.

Applying the 20–day period in *Busenlehner* to the facts in this case, it is clear that all of the title applications that were forwarded to the Department of Motor Vehicles were beyond the 20 days and thus, too late. Perfection cannot be deemed "substantially contemporaneous" with creation of these security interests. These transfers must also be deemed made to secure antecedent debts.

## CONCLUSION

The court holds that the defendants Ray Chadwick, Denny Vick, and the late Alfred Vick have not proved the transactions to be "contemporaneous exchange(s) for new value" under Section 547(c)(1). Rather, the evidence shows the transfers attempt to secure antecedent debts of the debtor-in-possession under Section 547(b)(2).

Since the parties have stipulated that all other elements of a Section 547(b) preferential transfer had been proven by the debtor-in-possession, all of the transactions are classified as avoidable preferences under § 547(b).

Consequently, since the challenged security interests have are avoided, Claims Nos. 71 and 72 of the late Alfred Vick; Denny Vick's amended Claim No. 79 and Chadwick's Claim No. 80 are all classified as **UNSECURED.**

This Memorandum of Decision will constitute findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052. A separate order will be entered consistent with this memorandum of opinion.

APPENDIX A

**Denny Vick**
*(Claim # 77, 79)*

| Security | Date of Loan | Date Application Received | Difference |
|---|---|---|---|
| 1988 Mack | July 17, 1992 | August 21, 1992 | 35 days |
| 1979 Fontaine Trailer | July 17, 1992 | August 21, 1992 | 35 days |

**Alfred M. Vick** (Collateral subject to registration with Dept. of Motor Vehicles)
*(Claim # 72)*

| Security | Date of Loan | Date Application Received | Difference |
|---|---|---|---|
| 1988 Mack (009810) | July 24, 1992 | August 21, 1992 | 28 days |
| 1985 Mack (004397) | July 24, 1992 | August 28, 1992 | 35 days |
| 1979 Int'l (12098) | July 24, 1992 | No Record of Application | N/A |
| 1981 Int'l (16192) | July 24, 1992 | August 21, 1992 | 28 days |

**Alfred M. Vick** (Collateral subject to UCC–1 filing)
*(Claim # 71)*

| Security | Date of Loan | Date UCC–1 filed | Difference |
|---|---|---|---|
| See attached Exhibit "A" | July 24, 1992 | August 11, 1992 | 18 days |
| See attached Exhibit "B" | August 6, 1992 | September 1, 1992 | 26 days |

**Raymond Chadwick**
*(Claim # 80)*

| Security | Date of Loan | Date UCC–1 filed | Difference |
|---|---|---|---|
| '75 Windham Forklift | July 17, 1992 | August 11, 1992 | 25 days |
| '66 Taylor Forklift | July 17, 1992 | August 11, 1992 | 25 days |

REF:033cls7CLSwk

---

*ORDER HOLDING PERFECTION OF SECURITY INTERESTS TO BE AVOIDABLE PREFERENCES UNDER SECTION 547(B) AND CLASSIFYING CLAIMS AS UNSECURED*

This matter came before the court on three adversary proceedings filed by the debtor-in-possession, W.T. Vick Lumber Company, Inc., seeking to avoid transfer of security interests to officers/shareholders as preferential transfers under 11 U.S.C. § 547(b). The parties stipulated to the material facts of the case. The court has considered the facts stipulated, the accompanying joint exhibit and the documents in the file in the context of applicable law. The court finds that the challenged transfers, securing claims totalling $114,800.00 in principal, must be **AVOIDED** under Section 547(b) and the claims reclassified as **UNSECURED**. To that effect, it is hereby

**ORDERED, DECREED AND ADJUDGED:**

1. The transfers of security interests challenged in APs 94–70581, 94–70582 and 94–70583 were not "substantially contemporaneous" with the underlying loan and security agreement. Therefore, the affirmative defense of 11 U.S.C. § 547(c)(1) was not available to these defendants.

2. Since the transfers of security interests cannot be viewed as contemporaneous, the court finds them to be "antecedent debts" in the meaning of 11 U.S.C. § 547(b)(2). (*See* accompanying Memorandum of Decision).

3. The parties agreed in their Joint Stipulation of Facts (AP 94–70581 Doc. 13, AP 94–70582 Doc. 14 and AP 94–70583 Doc. 14) that the debtor-in-possession/plaintiff had proven all of the elements of a Section 547(b) preferential transfer—except for the "antecedent debt" requirement of Section 547(b)(2).

4. Consequently, the court holds that all the challenged transfers are **AVOIDED** as preferential transfers under Section 547(b).

5. The court holds that Claims Nos. 71 and 72 of the late Alfred Vick; Denny Vick's amended Claim No. 79 and Chadwick's Claim No. 80 are all reclassified as **UNSECURED.**