## In re VENICE–OXFORD ASSOCIATES LIMITED PARTNERSHIP, Debtor.

### Venice–Oxford Associates Limited Partnership, Plaintiff,

v.

### Multifamily Mortgage Trust 1996–1 and LaSalle National Bank, Defendants.

**Bankruptcy No. 97–9831–8G1.
Adversary No. 97–836.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

June 7, 1999.

See also 236 B.R. 791, 236 B.R. 805, 236 B.R. 814.

Russell M. Blain, Wanda H. Anthony, Stichter, Riedel, Blain & Prosser, P.A., Tampa, FL, for Venice–Oxford Associates Limited Partnership.

Paul Bennett Bran, Guy S. Neal, Dickstein, Shapiro, Morin & Oshinsky, L.L.P., Washington, DC, for Venice–Oxford Associates Limited Partnership.

Gregg W. McClosky, Michael J. Ioannou, Mattlin & McClosky, Boca Raton, FL, for Multifamily Mortgage Trust 1996–1 and LaSalle National Bank.

## ORDER ON (1) PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT I AND COUNT II, AND (2) CREDITORS' MOTION FOR FINAL SUMMARY JUDGMENT

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court for hearing to consider (1) the Motion for Partial Summary Judgment on Count I and Count II filed by the Debtor, Venice–Oxford Associates Limited Partnership, and (2) the Motion for Final Summary Judgment filed by the Defendants, Multifamily Mortgage Trust 1996–1 and LaSalle National Bank.

The Debtor is the owner of a residential apartment complex in Sarasota County, Florida. The Defendants are the holders of a first mortgage on the Debtor's property. The Defendants also held a perfected security interest in the rents generated from the apartment complex. On February 13, 1997, the Circuit Court for Sarasota County entered a Final Judgment of Foreclosure. The Final Judgment includes a decretal provision that effected a transfer of the Debtor's ownership interest in the rents to the Defendants.

In the Complaint, the Debtor seeks to set aside and recover any transfer of its ownership interest in the rents to the Defendants that occurred as a result of the Final Judgment. The Complaint contains three counts. In Count I, the Debtor seeks to avoid and recover the transfer as a preferential transfer pursuant to § 547 and § 550 of the Bankruptcy Code. In Count II, the Debtor seeks to avoid and recover the transfer as a constructively fraudulent transfer pursuant to § 548(a)(2) and § 550 of the Bankruptcy Code. In Count III, the Debtor seeks to avoid and recover the transfer as a constructively fraudulent transfer pursuant to § 544(b) of the Bankruptcy Code and Florida Statute §§ 726.105(1)(b) and 726.106(1).

Each party has filed a Motion for Summary Judgment. In its Motion, the Debtor seeks the entry of a summary judgment in its favor only as to Count I and Count II of the Complaint. The Debtor contends that it has established all of the elements of a voidable preferential transfer under § 547, and all of the elements of a voidable fraudulent transfer under § 548(a)(2) of the Bankruptcy Code, that the facts relating to the causes of action are not in genuine dispute, and that it is therefore entitled to the entry of a judgment against the Defendants as a matter of law.

The Defendants seek the entry of a summary judgment in their favor as to all counts of the Complaint. The Defendants assert that the Debtor cannot prove the requisite elements of the causes of action set forth in the Complaint as a matter of law, that there are no genuine issues of material fact in dispute with respect to the Complaint, and that they are entitled to summary final judgment in their favor.

### Background

The Debtor owns and operates a 180–unit residential apartment complex located in Sarasota County, Florida, known as the Villa Capri Apartments.

On October 27, 1982, the Debtor executed and delivered to Shearson/American Express Mortgage Corporation a Mortgage securing payment of a Mortgage Note, as modified, and the Mortgage was recorded in the public records of Sarasota County, Florida. The property described in the Mortgage included the real property

upon which the Debtor's apartment complex is located, all improvements thereon, and "all rents, issues, proceeds and profits accruing and to accrue from said premises." The Mortgage also contains an assignment of rents provision.

The Defendants are the current owners and holders of all right, title, and interest in the Mortgage and related loan documents.

In 1996, the Defendants began a foreclosure action against the Debtor in the Circuit Court for Sarasota County, Florida.

On October 16, 1996, the Circuit Court entered an Order Denying Motion for Appointment of Receiver and Granting Alternative Motion to Compel Deposit of Rents. Generally, the Order authorized the Debtor to continue to collect the rents arising from the apartment complex, and to use the rents to pay its ordinary and necessary expenses to preserve and operate the property, and provided that the Debtor deposit the net rents into a jointly controlled interest bearing account. Specifically, the Order provided in part that all rents from the property collected by the Debtor, "net of amounts payable by Venice–Oxford to pay reasonable, necessary and ordinary expenses solely to protect, preserve, and operate the real property ('Net Rents') shall forthwith be deposited into a jointly controlled interest bearing account." The Order further provided that "[t]he Net Rents shall not be expended for any other purpose unless agreed to in writing by the parties or further order of this Court."

On February 13, 1997, the Circuit Court entered a Final Judgment of Foreclosure against the Debtor. According to the Final Judgment of Foreclosure, the Debtor owed the Defendants the sum of $6,693,-567.50 as of the date of the Judgment. Paragraph 16 of the Final Judgment provided:

> All rents, issues, proceeds, income, revenue and profits arising from the Property ("Rents") described in the Loan Documents previously collected by Venice–Oxford and all Rents hereinafter generated from the Property shall forthwith be delivered to Plaintiffs and Plaintiffs are hereby declared the owner of all Rents. Further, all Rents deposited into the escrow account pursuant to this Court's Order dated October 16, 1996, shall forthwith be delivered to Plaintiffs.

The Final Judgment does not specifically provide that any amount of the rents, whether delivered to the Plaintiff as required by the judgment or generated prior to a foreclosure sale, should be credited against the amount of the judgment. The Final Judgment scheduled a foreclosure sale of the Property for March 13, 1997.

The Debtor filed a petition for relief under chapter 11 of the Bankruptcy Code on March 7, 1997.

## Discussion

### I. Count I–Preference.

Section 547(b) of the Bankruptcy Code provides:

**11 U.S.C. § 547. Preferences**

.    .    .    .    .

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

■ Section 547 "allows a trustee to recover transfers made to a creditor within a short time prior to the petition date. This prevents a creditor from receiving more than it would have received through liquidation and distribution of the estate assets." *In re Thurman Construction, Inc.*, 189 B.R. 1004, 1009 (Bankr.M.D.Fla. 1995). The section "sets out five specific enumerated elements the trustee must allege and prove in order to establish that the transfer in question is a voidable preference." *In re Safe–T–Brake of South Florida, Inc.*, 162 B.R. 359, 362 (Bankr. S.D.Fla.1993). Each of the elements must be proven by a preponderance of the evidence in order to avoid the transfer pursuant to § 547(b) of the Bankruptcy Code. *In re Safe–T–Brake*, 162 B.R. at 362; cf. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Section 1107 provides that the debtor in possession has all of the powers and duties of a trustee, with exceptions not relevant here.

For purposes of Count I, it appears that the parties do not dispute that a transfer occurred of an interest of the debtor in property, that the transfer was to or for the benefit of creditors, or that the transfer was for or on account of an antecedent debt. In this case, the three elements of a voidable preference at issue are (1) whether the transfer occurred within the time limitations set forth in § 547, (2) whether the Debtor was insolvent at the time of the transfer, and (3) whether the transfer enabled the Defendants to receive more than they would have received in a chapter 7 case.

### A. The date of the transfer.

The Debtor asserts that "to the extent it transferred Debtor's ownership interest in the Gross Rents to the Mortgagees, the State Court Judgment was undeniably an involuntary transfer of the Debtor's interest in property within the meaning of § 101(54)." Plaintiff's Memorandum of Points and Authorities, p. 11. Since the State Court Judgment was entered on February 13, 1997, and the Debtor filed its bankruptcy petition on March 7, 1997, the Debtor contends that the transfer was made "within 90 days before the date of the filing of the petition" as required by § 547(b)(4).

The Defendants assert that § 547(e)(2) contains a special definition of when a transfer is made, and if the transferee is a secured creditor, the special definition provides that a "transfer" for purposes of § 547 occurs when the transferee perfects its security interest in the property. Consequently, the Defendants contend that in this case the transfer of the Debtor's interest in the rents occurred on October 27, 1982, when the Mortgage containing the assignment of rents was recorded and the assignment was perfected under Florida law. Creditors' Motion for Summary Judgment, pp. 18–19.

Section 547(e)(2) provides as follows:

**11 U.S.C. § 547. Preferences**

.　　.　　.　　.　　.

(e)(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made—

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time, except as provided in subsection (c)(3)(B);

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or

(C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—

(i) the commencement of the case; or

(ii) 10 days after such transfer takes effect between the transferor and the transferee.

According to the Defendants, this section means that "[s]ection 547 recognizes that the change from unsecured status to secured within the 90 day period will be deemed a transfer while a change in status from secured to absolute ownership is no preference at all based on the creditors status going into the 90 day period as a secured creditor." Creditors' Motion for Final Summary Judgment, p. 20.

The Court concludes that the transfer at issue in this case occurred on February 13, 1997.

Section 547(b) provides that a trustee, or a debtor in possession, may avoid "any transfer" of an interest of the debtor in property if all of the elements set forth in that subsection are present. Section 101(54) of the Bankruptcy Code, which applies to all cases under chapter 7, 11, 12, or 13 of title 11 pursuant to § 103(a), defines a "transfer" as follows:

## 11 U.S.C. § 101. Definitions

In this title—

.        .        .        .        .

(54) "transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption.

According to the Defendants, if the transferee is a secured creditor § 547(e) limits the types of transfers that are subject to avoidance under § 547 to transfers of the security interest in property of the debtor, notwithstanding the use of the broadly-defined term "transfer" in § 547(b). Further, the Defendants' theory apparently assumes that the limitation was intended because no purpose is served in recognizing any transfer beyond the grant of a perfected security interest when determining whether the transfer is avoidable under § 547.

▮ Subsection 547(e) does not limit the operation of § 547 with respect to transfers of security interests, however, but provides a "grace period" in which security interests must be perfected for purposes of applying the elements of a preference action. The purpose of § 547(e) is well-documented. *In re Arnett,* 731 F.2d 358, 362 (6th Cir.1984)("Congress explicitly enacted a 10–day limitation for the perfection of security interests in order to preserve 'relation back.'"); *In re Alexander,* 219 B.R. 255, 263 (Bankr.Minn.1998)("In § 547(e)(2), however, Congress has since specifically articulated its intent to discourage secret liens against property of the debtor by postponing the effect of a transfer that was not perfected within ten days of its occurrence."); *In re W.T. Vick Lumber Company, Inc.,* 179 B.R. 283, 288 (Bankr.N.D.Ala.1995) ("This majority view is that Congress clearly intended to differentiate between genuinely contemporaneous transactions (frequently cash) under Section 547(c)(1), purchase money or 'enabling' loans under the Section 547(c)(3) exception to avoidance and other transactions. Further, Section 547(e)(2)(A) and (B) define the 'relation-back' periods for most secured transactions being considered under Section 547(c)(1)."); *In re Beasley,* 183 B.R. 857, 860 (Bankr.Mo.1995)("Congress made the change to create a uniform rule throughout the country and it did not intend for state grace periods to be relevant under Section 547.") quoting *In re Loken,* 175 B.R. 56 (9th Cir. BAP 1994); *In re Walker,* 161 B.R. 484, 500 (Bankr.D.Idaho 1993)("[T]he legislative and other history reveals that Congress intended that creditors be allowed a uniform ten day grace period within which to perfect security interests."); *In re Walker Industrial Auctioneers, Inc.,* 45 B.R. 452, 454 (Bankr. D.Or.1984)("The legislative history of the Bankruptcy Code supports this conclusion: 'Subsection (e) of § 547 is designed to

reach the different results under the 1962 version of Article 9 of the U.C.C. and under the 1972 version because different actions are required under each version in order to make a security agreement effective between the parties.' ")(quoting Notes of the Committee on the Judiciary, Senate Report No. 95–989.); *In re Murray*, 27 B.R. 445, 451 (Bankr.M.D.Tenn.1983)("The fixing of the 10–day grace periods in §§ 547(c)(3) and (e)(2) was an effort to establish a national uniform perfection period for enabling loans in bankruptcy cases.").

■ Consequently, § 547(e) seeks only to establish the rule for determining when a transfer of a security interest occurs in those cases in which the transfer of a security interest is the subject of the avoidance action. The subsection does not mean that transfers of other types of interests are not also subject to avoidance under § 547(b).

With specific reference to transfers involving an assignment of rents, the Bankruptcy Court in *In re Financial Center Associates of East Meadow, L.P.*, 140 B.R. 829, 833–34 (Bankr.E.D.N.Y.1992) explained that different transfers of different interests may occur within the single credit relationship:

> Both the mortgage and the assignment of rent as additional security involve multiple transfers: one taking place at the time of the perfection of the security device by establishing its priority; and another occurring upon the completion of the legal procedure upon which enforcement of the security is conditioned—the so-called "triggering event."

Although the court in the *Financial Center* case concluded that the latter transfer was not avoidable because it did not satisfy other elements of § 547, the Court treated the second transfer as a transfer which may be made within the dates set forth in § 547(b)(4).

In *In re Union Meeting Partners*, 163 B.R. 229 (Bankr.E.D.Pa.1994), which also involved an assignment of rents, the issue was whether the delivery of rent demand letters constituted a transfer of an interest of the debtor in property. The court first noted that the expansive definition of "transfer" contained in § 101(54) includes every mode of disposing of or parting with an interest in property. *In re Union Meeting Partners*, 163 B.R. at 234. The Court then phrased the issue as whether the demand letters "resulted in some other parting of an interest of the Debtor in its property," in addition to the perfection of its senior lien on the rents which previously had been accomplished when the mortgage was recorded. *Id.* at 235. In *Union Meeting Partners*, the court concluded that such an additional parting may be found in the debtor's deprivation of its right to possession and use of the rents. *Id.*

In this case, the Defendants contend that the operative transfer for purposes of this preference action is the perfection of its security interest in the rents, and that this event occurred when the Mortgage was recorded in 1982, prior to the time 90–day time limitation set forth in § 547(b)(4). The point of *Financial Center Associates* and *Union Meeting Partners*, however, is to demonstrate that transactions involving an assignment of rents may include a separate "transfer" of an interest of the debtor in property subsequent to the perfection of the creditor's assignment of rents, and that this subsequent transfer may occur within the 90–day preference period, even if the perfection of the security interest occurred prior to the 90–day period. Whether the subsequent transfer can satisfy other elements of a voidable preference will be addressed later in this Opinion.

■ In conclusion, the Debtor asserts in this case that paragraph 16 of the Final Judgment of Foreclosure entered on February 13, 1997, effected a transfer of an interest of the Debtor in the rents, and that the transfer occurred within the 90–day period prior to the filing of its bank-

ruptcy petition, as set forth in § 547(b) of the Bankruptcy Code. The Court determines that the date of the transfer at issue in this case is February 13, 1997. Although § 547(e) provides the method of calculating the date on which a security interest is transferred for purposes of § 547, the subsection does not provide that the transfer of the security interest is the only transfer in a secured transaction that may be subject to avoidance under § 547(b). Subsequent transfers effected in connection with the enforcement of the security interest are also subject to avoidance actions under § 547, and the subsequent transfers may occur on a date different from the date on which the security interest was perfected.

## B. Insolvency.

The Debtor asserts that it has satisfied its burden of showing that it was insolvent on the date that the transfer of rents was effected by the Final Judgment of Foreclosure. First, the Debtor relies on the presumption of insolvency contained in § 547(f) of the Bankruptcy Code. That section provides that, for purposes of § 547, "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." In this case, the Final Judgment was entered on February 13, 1997, within the 90-day period preceding the filing of the Debtor's bankruptcy petition on March 7, 1997. The Debtor also relies on the affidavit of Mark E. Schifrin (Schifrin), the Executive Vice President of the Managing General Partner of the Debtor. In his affidavit, Schifrin states that the Debtor's liabilities exceeded the fair market value of all of the Debtor's assets by at least the sum of $1.2 million during the ninety days preceding the filing of the petition, and that the Debtor therefore was insolvent during the requisite period.

The Defendants contend that § 101(32) of the Bankruptcy Code provides the definition of "insolvency" with respect to partnerships. That section provides:

**11 U.S.C. § 101. Definitions**

In this title—

.   .   .   .   .

(32) "insolvent" means—

.   .   .   .   .

(B) with reference to a partnership, financial condition such that the sum of such partnership's debts is greater than the aggregate of, at a fair valuation—

(i) all of such partnership's property, exclusive of property of the kind specified in subparagraph (A)(i) of this paragraph; and

(ii) *the sum of the excess of the value of each general partner's non-partnership property,* exclusive of property of the kind specified in subparagraph (A) of this paragraph, *over such partner's nonpartnership debts.*

(Emphasis supplied). The Defendants contend, therefore, that with respect to the insolvency of a partnership, the value of all of the general partners' assets in excess of the general partners' debts must be added to all of the partnership's assets to determine whether the partnership's debts are greater than the value of the assets.

The Debtor has stipulated on the record that it would not have been insolvent during the relevant time period if the assets of its general partners are included in the calculation of the Debtor's aggregate assets and liabilities.

The Debtor has already agreed in open court to stipulate, for the purposes of this adversary proceeding, that if the Debtor has a viable legal claim against its general partners for the payment of MMT's mortgage loan deficiency, the Debtor would not be "insolvent" because the general partners' assets are sufficient to pay such a deficiency.

Plaintiff's Written Response to Defendants' Interrogatories to Plaintiff, Answer to Interrogatory No. 18. The Debtor asserts, however, that the general partners

are not legally responsible for the debt owed to the Defendants because the loan was nonrecourse, and that the partners' assets therefore should not be included in the Debtor's insolvency calculation.

To calculate whether a partnership is insolvent, aggregate assets are compared with the partnership's debts to determine whether the debts exceed the value of the assets. The issue in this case, therefore, is whether the aggregate assets consist not only of the Debtor's partnership assets, but also the net assets of the Debtor's general partners.

It appears undisputed in this case that the Defendants' claims against the Debtor are nonrecourse.

The Defendants rely on *In re Union Meeting Partners,* 163 B.R. 229 (Bankr. E.D.Pa.1994) to support their contention that the partners' assets should be included in the insolvency computation and that the nonrecourse nature of the debt is irrelevant pursuant to § 101(32) of the Bankruptcy Code. In *Union Meeting Partners,* the Bankruptcy Court found that the debtor did not prove that it was insolvent at the time of the transfers at issue in the preference action. *In re Union Meeting Partners,* 163 B.R. at 239. The parties had stipulated that the general partners of the partnership debtor had substantial nonpartnership assets in excess of their nonpartnership debts, but the debtor argued that the partners' assets should not be included in the computation of insolvency because the creditor's loan was nonrecourse. *Id.* The Court looked to the definition of insolvency set forth in § 101(32), and determined that the section unconditionally required that the net nonpartnership assets of the general partners be included in the assessment of a partnership's insolvency. *Id.* at 240. Since the "plain language" of the statute does not provide that a partner's assets should be included in the insolvency calculation only in those situations where the creditor has recourse against the partner's assets, the Court

would not inject such a term or condition in the definition. *Id.*

The court that decided *Union Meeting Partners* recently restated its conclusion in *In re Labrum & Doak, LLP,* 227 B.R. 383, 390 (Bankr.E.D.Pa.1998).

The parties recognize, as we indicated in *In re Union Meeting Partners,* 163 B.R. 229, 239–40 (Bankr.E.D.Pa.1994), that the net assets of the Debtor's partners must also be considered in determining whether the Debtor's liabilities exceed its assets.

Other courts have also assessed the insolvency of a partnership without applying any conditions not expressed in the § 101 definition of insolvency.

Insolvency is measured by the "balance sheet" method with liabilities exceeding the "fair valuation" of assets. 11 U.S.C. § 101(31). In a partnership case, the issue of insolvency includes consideration of the general partner's assets. Thus, for the purpose of determining a partnership's insolvency, each general partner's assets (other than property transferred, concealed or removed with intent to hinder, delay or defraud creditors) must be taken into account along with the debtor's to the extent that the value of nonpartnership property exceeds nonpartnership debts. 11 U.S.C. § 101(31)(B).

*In re Writing Sales Limited Partnership,* 96 B.R. 175, 177 (Bankr.E.D.Wis.1989). "Under section 101 of the Code, a partnership is not considered to be insolvent unless its liabilities exceed not only its own assets, but also the surplus of each partner's individual assets." 5 Collier on Bankruptcy ¶ 548.08 (15th ed.1998). According to Collier, therefore, "[i]t is impossible for a partnership to be insolvent so long as a single partner is solvent. An insolvent partnership thus bespeaks insolvency of all its partners, because if any partner can pay all of the debts of the partnership, the partnership is solvent." 5 Collier on Bankruptcy ¶ 548.08, at 548–71.

■ To determine whether a debtor partnership is insolvent, therefore, the Court concludes that the net nonpartnership assets of each general partner of the partnership are taken into account, together with all of the partnership's assets. For purposes of the insolvency calculation under § 101(32) and § 547(b) of the Bankruptcy Code, the Court further finds that such partners' assets are included, regardless of whether the partnership debts are recourse or nonrecourse. The Debtor may be correct that neither a partnership nor its general partners are personally liable to pay a nonrecourse debt as a matter of law, so that the assets of the general partners are not available to satisfy any deficiency claim asserted by the particular "nonrecourse" creditor, independent of a preference action. The definition of insolvency set forth in § 101(32) and applied in § 547(b), however, does not address the enforcement rights of any specific creditor. The definition contains no qualifications or terms regarding the nature of any particular indebtedness, but provides only that a partnership is insolvent if the sum of its debts is greater than the value of all of the partnership's property, plus the value by which "each general partner's" nonpartnership property exceeds his nonpartnership debts. The definition does not provide that a general partner's nonpartnership property is taken into account only if the general partner is personally liable on a particular debt incurred by the partnership.

■ In this case, the Debtor has stipulated that "the general partners' assets are sufficient to pay" any deficiency asserted by the Defendants. Consequently, the Court concludes that the Debtor has not established the element of insolvency in this case as required by § 547(b)(3) of the Bankruptcy Code.

## C. "More than such creditor would receive if the case were a case under chapter 7."

As an element of a preference action, § 547(b)(5) provides that the transfer of the debtor's interest in property must have enabled the creditor to receive more than the creditor would have received if the case were a case under chapter 7 and the transfer had not been made.

The Debtor asserts that the transfer of the rents effected by the Final Judgment of Foreclosure enabled the Defendants to receive more than they would have received in a chapter 7 case because, prior to the entry of the Final Judgment, the Defendants' interest in the rents generated from the Debtor's property was subject to all reasonable and ordinary expenses necessary to preserve and operate the property. Specifically, the Order Denying Motion for Appointment of Receiver and Granting Alternative Motion to Compel Deposit of Rents entered by the state court on October 16, 1996, authorized the Debtor to collect and use the rents arising from the apartment complex to pay its ordinary and necessary expenses to preserve and operate the property, provided that the Debtor deposit the "net rents" into an interest bearing account jointly controlled by the Debtor and the Defendants. As a result of the entry of the Final Judgment of Foreclosure, the Defendants were declared the owner of "*all* rents, issues, proceeds, income, revenue and profits arising from the Property," either previously collected or generated in the future. (Emphasis supplied). Consequently, the Debtor contends that the "State Court Judgment constituted an avoidable preferential transfer because it improved the Mortgagees' position in the 90–day period-it converted the Mortgagees from holding a perfected security interest in Gross Rents subject to the trade creditor 'carve out' (i.e., the Net Rents) to an absolute owner of the Gross Rents subordinate to no other claims." Plaintiff's Memorandum of Points and Authorities in Support of Motion for Summary Judgment, p. 15.

In response, the Defendants assert that a transfer to a secured creditor in satisfac-

tion of its lien does not constitute a voidable preference. In a chapter 7 case, the Defendants would be entitled to the full value of their collateral, which consists of the real property underlying the Debtor's apartment complex, plus the value attributable to the rental income stream. (Creditors' Motion for Final Summary Judgment, p. 16.) Accordingly, since the Final Judgment of Foreclosure transferred only ownership of the rents, and the Defendants would have received the value of such rents in a chapter 7 case as creditors holding a perfected security interest, the Defendants did not receive more than they would have received in a chapter 7 case.

Finally, the Defendants contend that the effect of the State Court Order compelling the deposit of the net rents into a jointly-controlled account does not alter the analysis, because the creditors who provided necessary goods and services to the Debtor as allowed by the Order would nevertheless hold only unsecured claims against the Debtor which would not be paid prior to the Defendants' secured claim. "In a Chapter 7, these unsecured trade creditors would not receive any portion of the Rents until Creditors received the full value of their collateral—equal to the value of the real property plus the value of the Rents." Creditors' Motion for Final Summary Judgment, p. 17. Consequently, in a chapter 7 case before the entry of the Final Judgment, the Defendants would have received the full value of the rents, regardless of the carve out provided in the prior Rent Order for the general unsecured trade creditors, and in a chapter 7 case after the entry of the Final Judgment, they likewise would have received the full value of the rents, so that the Defendants did not enjoy any improvement in position as a result of the Final Judgment.

The Court concludes that the Defendants in this case did not receive more as a result of the transfer of rents contained in the Final Judgment than they would have received in a chapter 7 case.

The general rule appears to be established that transfers to secured creditors are not preferential, at least to the extent that the property transferred does not exceed the value of their collateral.

[A] creditor that receives payment attributable to a secured claim is not usually "preferred" because secured creditors generally receive 100% of the value of their collateral upon distribution in a Chapter 7 case.... Transfers to a secured creditor within 90 days of bankruptcy do not ordinarily exceed the value of the collateral, and thus do not deplete the debtor's estate or deprive similarly situated creditors of their fair share of the creditor's collateral, because the secured creditor has an identifiable property interest in its collateral or the proceeds derived from the sale of it.

*In re Schwinn Bicycle Co.,* 200 B.R. 980, 988 (Bankr.N.D.Ill.1996). In *Union Meeting Partners, supra,* which specifically involved an assignment of rents, the Court stated:

The plaintiff, to satisfy § 547(b)(5), must show that the creditor was preferred in some amount, and it cannot succeed if it is proven that (1) the creditor was fully secured; (2) the transfer was nothing more than a seizure of the secured creditor's collateral; or (3) the unsecured creditors would be paid in full in a Chapter 7 case.

. . . . .

As noted above, in light of the Mountain View holding that a mortgagee's security interest in rents is perfected upon the recording of a document containing a rent assignment, Lincoln's interests in the rents has been perfected, for bankruptcy purposes, since May 24, 1988. Thus, in a hypothetical liquidation of the Debtor on the Petition Date, which is the date as of which the hypothetical liquidation must be constructed, ... Lincoln would be entitled to the entire value of the Property, including any value attributable to the rental income

stream, whether it had sent the rent demand letters or not.

*In re Union Meeting Partners,* 163 B.R. 229, 236–37 (Bankr.E.D.Pa.1994). Finally, also in connection with an assignment of rents, the Court in *Financial Center Associates, supra,* stated:

> Both the mortgage and the assignment of rent as additional security involve multiple transfers: one taking place at the time of the perfection of the security device by establishing its priority; and another occurring upon the completion of the legal procedure upon which enforcement of the security is conditioned—the so-called "triggering event." ... Neither, however, involve preferentially avoidable transfers.... [A]s a consequence of the existing security, the later transfer which effects enforcement cannot then provide the transferee with more than such creditor would receive in distribution under chapter 7 had the later transfer not been made.

Simply stated, if a secured creditor's lien is valid, its expected return in a chapter 7 liquidation includes the value of the collateral up to the total amount of its claim. Accordingly, if a creditor with a valid security interest in property of a debtor repossesses its collateral prior to the debtor's bankruptcy case, the repossession is not avoidable as a preference because the creditor would have received the value of the collateral as part of the distribution in the chapter 7 in any event. 3 Norton Bankruptcy Law and Practice 2d, § 57:9.

In this case, the Debtor acknowledges that "[u]nder Florida law, and prior to the entry of the State Court Judgment, the Mortgagees held a perfected assignment of the Rents from the Property." Plaintiff's Memorandum of Points and Authorities, p. 14. According to the general rule, therefore, the transfer of the rents to the Defendants pursuant to the Final Judgment did not enable the Defendants to receive more than they would have received in a chapter 7 case because the Defendants received no more than the value of their collateral. The Debtor's only contention with respect to this element of a preferential transfer is that the "Rent Order" entered by the State Court in the foreclosure action subjected the Defendants' interest in the rents to the expenses necessary to maintain and preserve the Debtor's property. According to the Debtor, therefore, the later transfer of absolute ownership to the Defendants improved their position to the extent of such expenses.

The Rent Order, however, did not divest the Defendants of their interest in the rents, but only allowed the Debtor to use the Defendants' collateral for the specific purposes and on the limited conditions set forth in the Rent Order. The Rent Order provided only that all rents collected by the Debtor, "net of amounts payable" by the Debtor for reasonable and necessary expenses to preserve and operate the real property, would be deposited in a jointly-controlled account. Nowhere does the Order state that the Defendants' lien no longer attached to the rents which could be used to pay the necessary expenses associated with the property. In fact, the Order contained specific safeguards in favor of the Defendants to ensure that their collateral was protected. The Order required, for example, that the Debtor provide the Defendants with "satisfactory evidence of all Rents collected and payables incurred" on a monthly basis. Consequently, instead of causing the Defendants' lien on the rents to be subject to the claims of the trade creditors, as suggested by the Debtor, the Rent Order did not affect the Defendants' lien position, but only allowed the Debtor to use the rents to preserve the Defendants' other collateral. In this respect, the Rent Order is no different from an order entered by a bankruptcy court which recognizes a secured creditor's continuing interest in cash collateral, but allows a debtor to use the secured creditor's cash collateral during the pendency of its bankruptcy case, provided the creditor's

interest is adequately protected. Accordingly, if the Debtor had filed a chapter 7 petition after the entry of the Rent Order by the State Court, but before the entry of the Final Judgment, the Defendants would have been entitled to the full value of the rents in the chapter 7 case, prior to the unsecured claims of creditors who had provided goods or services to the Debtor pre-petition.

For purposes of distribution in a hypothetical chapter 7 case, the position of the Defendants was not improved by the transfer of ownership of the rents contained in the Final Judgment, and the transfer did not cause the Defendants to receive more than they would have received in a chapter 7 case.

## II. Counts II and III—Fraudulent transfer.

Count II of the Complaint is based on § 548(a)(2) of the Bankruptcy Code, and seeks to avoid and recover the transfer of the rents as a constructively fraudulent transfer. Section 548(a)(2) of the Bankruptcy Code provides:

## 11 U.S.C. § 548. Fraudulent transfers and obligations

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

. . . . .

(2) (A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with

the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

■ Count III of the Complaint is based on § 544 of the Bankruptcy Code and § 726.105 and § 726.106 of the Florida Statutes, and also seeks to avoid and recover the transfer of the rents as a constructively fraudulent transfer. Section 544(b) authorizes the avoidance of any transfer of an interest of the debtor in property that is voidable under applicable laws, including state laws to avoid fraudulent transfers, by a creditor holding an allowable unsecured claim.

Florida's laws regarding the avoidance of constructively fraudulent transfers are set forth in Florida Statute § 726.105(1)(b) and Florida Statute § 726.106(1). Florida Statute § 726.105(1)(b) provides:

## 726.105 Transfers fraudulent as to present and future creditors.

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

. . . . .

(b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

1. Was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

2. Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond

his ability to pay as they became due.

Florida Statute § 726.106(1) provides:

### 726.106 Transfers fraudulent as to present creditors.

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

These Florida statutes do not restrict the analysis of the transfers at issue to a period of only one year prior to the filing of a bankruptcy petition. In other material respects, however, Florida Statute § 726.105(1)(b) and Florida Statute § 726.106(1) are analogous "in form and substance" to § 548(a)(2) of the Bankruptcy Code. *In re United Energy Corp.,* 944 F.2d 589, 594 (9th Cir.1991)(Construing California's fraudulent transfer statutes, which are virtually identical to Florida's statutes).

■ Consequently, it is appropriate to analyze the similar provisions of the state statutes and § 548 of the Bankruptcy Code contemporaneously. · *In re United Energy Corp.,* 944 F.2d at 594. See also *In re Spatz,* 209 B.R. 907 (Bankr.N.D.Ill.1997) and *In re Grigonis,* 208 B.R. 950, 958 (Bankr.D.Mont.1997), in which the courts found that the fraudulent transfer statutes of Illinois and Montana, which are based on the Uniform Fraudulent Transfer Act, resemble § 548 so closely that the provisions of both were considered simultaneously, and the courts' findings applied equally to both the state statutes and the federal statute. Florida's statutes are also based on the Uniform Fraudulent Transfer Act.

A critical issue under both § 548(a)(2) of the Bankruptcy Code and the Florida Stat-utes is whether the debtor received "reasonably equivalent value" in exchange for the transfer. The Defendants contend that the Debtor received reasonably equivalent value because the rents will be applied, when actually received, to reduce the mortgage indebtedness owed by the Debtor to the Defendants. Section 548(d)(2) of the Bankruptcy Code provides:

### 11 U.S.C. § 548. Fraudulent transfers and obligations

.        .        .        .        .

(d)(2) In this section—

(A) "value" means property, *or satisfaction or securing of a present or antecedent debt of the debtor,* but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor.

(Emphasis supplied).

■ Cases construing these provisions confirm that the satisfaction or partial satisfaction of a debt constitutes reasonably equivalent value for purposes of determining whether a transfer was constructively fraudulent. *In re Erie Marine Enterprises, Inc.,* 216 B.R. 529, 538 (Bankr.W.D.Pa. 1998)(The transfer by the debtor served as a repayment for money received, and was therefore made in exchange for reasonably equivalent value.); *In re Foos,* 188 B.R. 239, 245 (Bankr.N.D.Ill.1995)(Payments which were made on account of antecedent debts and reduced the debtor's liabilities dollar for dollar were for reasonably equivalent value as a matter of law.); *In re Adventist Living Centers, Inc.,* 174 B.R. 505, 517 (Bankr.N.D.Ill.1994)(A transfer of accounts receivable to a landlord in satisfaction of unpaid rents, or an antecedent debt, was for reasonably equivalent value as a matter of law.); *In re Simco Mechanical, Inc.,* 151 B.R. 978, 984 (Bankr. S.D.Fla.1993)(At the time of the payments to the bank, the bank had a perfected security interest in accounts receivable, so that the debtor received reasonably equivalent value in exchange for the transfer of funds.); *In re Cavalier Homes of Georgia,*

*Inc.*, 102 B.R. 878, 886 (Bankr.M.D.Ga. 1989)(The transfer reduced the debtor's contingent liability on a guaranty, and the debtor therefore received reasonably equivalent value.)

In this case, it is undisputed that the Debtor owed the Defendants in excess of $6,693,567.50 pursuant to the Mortgage and Mortgage Notes executed in 1982. Pursuant to § 697.07, Florida Statutes, the state court authorized the use of the rents to pay reasonable expenses to protect, preserve, and operate the property, and required the mortgagor to deposit the net rents into a designated depository. That statute also provides that undisbursed collected rents remaining in the depository account "shall be disbursed at the conclusion of the action in accordance with the court's final judgment or decree." Finally, that statute provides that upon receipt of the actual rents, the Defendants are required to apply the amount received to reduce the indebtedness owed to it. Section 697.07 of the Florida Statutes provides in part:

**Chapter 697. Instruments Deemed Mortgages and the Nature of a Mortgage**

697.07. Assignment of rents

.         .         .         .         .

(4) Upon application by the mortgagee or mortgagor, in a foreclosure action, and notwithstanding any asserted defenses or counterclaims of the mortgagor, a court of competent jurisdiction, pending final adjudication of any action, *may require the mortgagor to deposit the collected rents into* the registry of the court, or in *such other depository as the court may designate.* However, the court *may authorize the use of the collected rents, before deposit* into the registry of the court or other depository, *to:*

(a) *Pay the reasonable expenses solely to protect, preserve, and operate the real property,* including, without limitation, real estate taxes and insurance;

(b) Escrow sums required by the mortgagor or separate assignment-of-rents instrument; and

(c) Make payments to the mortgagee. The court shall require the mortgagor to account to the court and the mortgagee for the receipt and use of the collected rents and may also impose other conditions on the mortgagor's use of the collected rents.

(5) Nothing herein shall preclude the court from granting any other appropriate relief regarding the collected rents pending final adjudication of the action. *The undisbursed collected rents remaining in the possession of the mortgagor or in the registry of the court, or in such other depository as ordered by the court, shall be disbursed at the conclusion of the action in accordance with the court's final judgment or decree.*

.         .         .         .         .

(8) *Any moneys received by the mortgagee pursuant to this statute shall be applied by the mortgagee in accordance with the mortgage, separate assignment-of-rents instrument, or promissory note, and the mortgagee shall account to the mortgagor for such application.*

(Emphasis supplied). Pursuant to this statute, therefore, the Defendants must apply any rents received to reduce the debt owed to it by the Debtor in accordance with the loan documents.

▪ Consequently, based on the definition of "value" set forth in § 548(d)(2) of the Bankruptcy Code, the construction of "reasonably equivalent value" by case law as set forth above, and the requirements of Florida law, the Court concludes that the Debtor will receive reasonably equivalent value in exchange for the transfer of ownership of the rents to the Defendants.

The Debtor contends that it received no value in exchange for the transfer because it did not receive a credit for the value of the rents either in the Final Judgment of Foreclosure or in the proof of claim filed by the Defendants in this chapter 11 case.

The Debtor's contention in this regard does not change the Court's conclusion. The Final Judgment of Foreclosure declared that the Defendants were the owners of the rents. Section 697.07(8), Florida Statutes, provides that any of the rents received by the mortgagee shall be applied in accordance with the documents, and that the mortgagee shall account to the mortgagor for such application. There is no evidence that the Defendants have received actual possession of any moneys as a result of the transfer of ownership. The Defendants have stipulated in an Affidavit filed in connection with these motions that they will apply any rents received "to reduce and/or satisfy the debt evidenced by the Mortgage and the Final Judgment pursuant to the terms, conditions and provisions of the loan documents and Florida law." Affidavit of Jeff Slahor, paragraph 13. Florida law requires that such credit be given when the rents are received, and requires the mortgagor to account to the mortgagee for such application. The Defendants' obligation to apply the rents is a statutory requirement, and therefore exists by operation of law, regardless of whether or not it was imposed separately in the Final Judgment. In any event, the Defendants have not yet received the rents, and prior to the actual receipt of the rents the Defendants cannot credit an as yet undetermined amount of rents which have not been received against the total debt owed to them.

Finally, also with respect to the fraudulent transfer claims contained in Count II and Count III of the Complaint, the Defendants have repeated their assertion that the relevant date of the transfer is the date on which the mortgage was recorded and the Defendants' interest in the rents was perfected, and not the date of the Final Judgment of Foreclosure. Further, the Debtor repeated its assertion that it was insolvent on the date of the transfer, and the Defendants asserted that the Debtor was not insolvent because the net assets of the Debtor's general partners must be included in the insolvency calcula-

tion. Both of these issues were resolved previously in connection with Count I, and the resolution applies equally to the fraudulent transfer cause of action.

### Conclusion

In conclusion, the Court determines that the Debtor's Motion for Summary Judgment as to Count I should be denied, and the Defendants' Motion for Summary Judgment as to Count I should be granted. With respect to the preference action, the Court finds that the date of the transfer for purposes of the Debtor's claim under § 547 of the Bankruptcy Code is the date that the Final Judgment of Foreclosure was entered by the state court, and not the date on which the Defendants' security interest in the rents was perfected under state law. The Court also finds, however, (1) that the Debtor has not established that it was insolvent on the date of the transfer, since the net assets of the Debtor's general partners should be taken into account, and (2) that the Defendants did not receive more as a result of the transfer of rents than they would have received if the case were a case under chapter 7, since the Defendants held a perfected security interest in the property transferred.

The Court further determines that the Debtor's Motion for Summary Judgment should be denied as to Count II of the Complaint, and the Defendants' Motion for Summary Judgment should be granted as to Count II and Count III of the Complaint. With respect to the fraudulent transfer action, the Court finds that transfer of ownership of the rents represented satisfaction or partial satisfaction of an antecedent debt owed by the Debtor, since the rents must be applied in accordance with the loan documents and state law, so that the Debtor received reasonably equivalent value in exchange for the transfer.

Accordingly:

**IT IS ORDERED** that:

1. The Motion for Partial Summary Judgment on Count I and Count II of the

Complaint filed by the Debtor, Venice–Oxford Associates Limited Partnership, is denied.

2. The Motion for Final Summary Judgment filed by the Defendants, Multifamily Mortgage Trust 1996–1 and LaSalle National Bank, is granted.

3. A separate Summary Judgment will be entered against the Debtor, Venice–Oxford Associates Limited Partnership, and in favor of the Defendants, Multifamily Mortgage Trust 1996–1 and LaSalle National Bank, as to Count I, Count II, and Count III of the Complaint.